TERRY DEAN HENSON AND WIFE NANCY RATHBONE HENSON, PLAINTIFFS v. GREEN TREE SERVICING LLC, DEFENDANT

No. COA08-1074

(Filed 19 May 2009)

## 1. Uniform Commercial Code— alleged breach of contract— warranty of clear title—mobile home

The trial court did not err by concluding that defendant did not breach its contract with plaintiffs by allegedly not providing clear title to plaintiffs for a mobile home, nor did it breach the warranty of clear title, because there was no evidence that defendant failed to transfer clear title when: (1) plaintiff wife admitted she received a title free from any liens from defendant; and (2) plaintiffs presented no evidence that the title was encumbered. N.C.G.S. § 25-2-312.

## 2. Appeal and Error— preservation of issues—failure to argue

Although plaintiffs contend defendant was negligent for breach of its duty to ensure that defendant had clear title and duties to hire and supervise employees, this assignment of error is abandoned under N.C. R. App. P. 28(b)(6) based on plaintiffs' failure to discuss the negligence claim in their brief.

---

**3. Fraud; Unfair Trade Practices— allegations of forged agreement—clear title**

The trial court did not err by concluding that an alleged forged agreement, coupled with the relationship between defendant and Gordon, the owner of property on which a mobile home had been stored, was insufficient to support a claim for fraud and unfair and deceptive trade practices because: (1) the purported forgery was immaterial and did not support either claim in light of the fact that defendant provided clear title; (2) even if plaintiff wife did not sign the agreement, plaintiffs did not suffer damage since the mobile home was not encumbered with a storage lien from Gordon; (3) there was no evidence that defendant contracted with Gordon to move the mobile home to his property, and instead the evidence revealed that Gordon moved the mobile home without permission or authorization from defendant; and (4) there was not more than a scintilla of evidence as to who in fact signed plaintiff wife's name to the agreement.

**4. Damages and Remedies— exclusion of plaintiff's evidence—verdict in defendant's favor**

Although plaintiffs contend they should have been permitted to introduce evidence of damages to the jury, the Court of Appeals declined to address this alleged error because the verdict was in defendant's favor.

**5. Appeal and Error— preservation of issues—failure to argue—failure to cite authority**

Although plaintiffs contend the trial court should have permitted them to offer evidence as to their communications with Johnson and as to defendant's relationship with Gordon, this assignment of error is abandoned under N.C. R. App. P. 28(b)(6) because plaintiffs offered no argument and failed to cite authority in support of the admissibility of such evidence.

Appeal by plaintiffs from judgment entered 25 February 2008 by Judge J. Marlene Hyatt in Henderson County Superior Court. Heard in the Court of Appeals 25 February 2009.

*The Lovins Law Firm, P.A., by Shannon Lovins, for plaintiff-appellants.*

*Smith Moore Leatherwood LLP, by Robert R. Marcus and C. Bailey King, Jr., for defendant-appellee.*

HUNTER, Robert C., Judge:

Terry and Nancy Henson (collectively "plaintiffs," "Mr. Henson" or "Mrs. Henson")[1] appeal from a directed verdict dismissing their action for breach of contract, breach of warranties, negligence, unfair and deceptive practices, and fraud against Green Tree Servicing, LLC ("defendant" or "Green Tree") arising out of their purchase of a mobile home that was previously owned by defendant. Plaintiffs also appeal the trial court's decision to exclude testimony related to plaintiffs' communications with various persons involved in the transaction and photographs depicting plaintiffs' damages. After careful review, we affirm.

## I. Facts

Around March 2004, defendant listed the mobile home for sale on a publicly available list. Patrick Johnson ("Mr. Johnson"), an independent mobile home dealer, contacted defendant about the mobile home. Defendant informed Mr. Johnson that the mobile home was located on the property of Ben Gordon ("Mr. Gordon") and that Mr. Johnson might encounter difficulty removing the home from Mr. Gordon's property. Defendant was aware that Mr. Gordon demanded compensation for moving the mobile home from a third party's property and for storing it on his property. Defendant did not authorize or request Mr. Gordon's services. Defendant did not believe that it owed Mr. Gordon any money or that Mr. Gordon had a valid lien. On or about 13 December 2004, Mr. Johnson made an offer of $7,650 for the mobile home.

Defendant sent an Agreement to Purchase Repossessed Manufactured Home (the "Agreement") to Mr. Johnson, who was listed as the buyer. The location of the mobile home was listed as: "Private drive off Massey Dr. in Fletcher/Henderson[.]" The date listed on the Agreement was 13 December 2004. The Agreement stated: "Offer good thru 12/17/04" and that the "[b]uyer assumes all responsibilities for storage and/or mechanic liens[.]"

Around the same time that Mr. Johnson and defendant were in discussions, Mrs. Henson responded to Mr. Johnson's newspaper advertisement of the mobile home. Mrs. Henson met with Mr. Johnson at his office and later viewed the mobile home at its location on Mr. Gordon's property. During the course of her negotiations,

---

1. Mr. Henson is a named plaintiff in this case; however, he was not involved in the transaction at issue.

Mrs. Henson knew that defendant, and not Mr. Johnson, owned the mobile home.

After viewing the mobile home, Mrs. Henson and Mr. Johnson began price negotiations. Mrs. Henson and Mr. Johnson agreed that Mrs. Henson would purchase the mobile home for the price of $12,200, and Mrs. Henson would be responsible for moving it off Mr. Gordon's property. There is testimony that Mrs. Henson signed a "Contract to Purchase and Deposit Agreement" for the mobile home that listed "Nancy Rathbone Henson" as the buyer and "Patrick Johnson" as the seller.[2] Mrs. Henson paid for the mobile home with a check written to Patrick Johnson, individually, for $12,200.

Mr. Johnson then informed defendant that plaintiffs were going to be the owners of the mobile home. Defendant told Mr. Johnson that Mrs. Henson needed to sign the Agreement that was previously sent to Mr. Johnson. The next day, Mr. Johnson delivered a certified check to defendant in the amount of $7,650 and a copy of the Agreement that was purportedly signed by Mrs. Henson. Patrick Johnson's name was crossed out and "Nancy Rathbone Henson" was written beside it. Defendant then transferred titled directly to Mrs. Henson.

According to Mrs. Henson, her son, Travis Henson ("Travis"), along with Mr. Johnson, met with an employee of defendant, David Worthington, on 14 December 2004. Mrs. Henson testified that Travis tendered the check for $12,200 to Mr. Johnson at the meeting, and Mr. Johnson gave title of the mobile home to Travis who then brought it to Mrs. Henson. The title listed defendant as the seller and had already been signed by defendant. There were no liens listed on the title. Prior to receiving title, Mrs. Henson stated that she received a damage disclosure statement signed by defendant.

At trial, Mrs. Henson claimed that she did not sign the Agreement and that her signature was forged by an unknown person on behalf of defendant. She further claimed that no one advised her of any type of storage lien on the mobile home. Plaintiffs' handwriting expert testified that "Nancy Henson probably did not sign . . . [the Agreement]." Plaintiffs' expert did not say who signed the Agreement.

After plaintiffs obtained title, they attempted to move the mobile home from Mr. Gordon's property. Plaintiffs moved only half of the mobile home in January 2005, but were unable to move the second

---

2. The agreement between Mr. Johnson and Mrs. Henson is not contained in the record.

HENSON v. GREEN TREE SERVICING LLC

[197 N.C. App. 185 (2009)]

half because Mr. Gordon parked his van in front of his driveway so as to block entrance to the property. Mrs. Henson spoke with law enforcement officers who confirmed that she had clear title and had the right to move the mobile home. The movers could have moved the van out of the driveway and taken the mobile home that day, but Mrs. Henson instructed them not to do so.

From January 2005 to October 2006, the other half of the mobile home remained on Mr. Gordon's property, where it was vandalized and fell into disrepair. After receiving a phone call from Mr. Gordon, plaintiffs moved the second half of the mobile home around October 2006.

At trial, plaintiffs offered the testimony of: 1) Mrs. Henson; 2) Mr. Henson; 3) Travis Henson; 4) David Worthington; 5) Jim Karr, David Worthington's supervisor; and 6) Teresa Dean, a forensic document examiner. Plaintiffs did not call Mr. Gordon or Mr. Johnson as witnesses. After the close of plaintiffs' evidence, the trial court granted defendant's motion for directed verdict. Plaintiffs now appeal.

## II. Standard of Review

"This Court reviews a trial court's grant of a motion for directed verdict *de novo*." *Weeks v. Select Homes, Inc.*, 193 N.C. App. 725, 730, 668 S.E.2d 638, 641 (2008). Upon a motion for directed verdict, the court must consider all evidence in the light most favorable to the non-moving party, and may grant the motion only if, as a matter of law, there is not more than a scintilla of evidence to support each element of the non-moving party's claim. *Id.*; *Kelly v. Harvester Co.*, 278 N.C. 153, 158, 179 S.E.2d 396, 398 (1971). The plaintiff must "offer evidence, beyond mere speculation or conjecture, sufficient for a jury to find every essential element of their claim." *Abell v. Nash County Bd. of Education*, 89 N.C. App. 262, 264-65, 365 S.E.2d 706, 707 (1988).

## III. Breach of Contract and Breach of Warranty Claims

**[1]** Plaintiffs argue that there was sufficient evidence for a reasonable jury to conclude that defendant breached its contract with plaintiffs by not providing clear title to plaintiffs and consequently, that defendant also breached the warranty of clear title. We disagree.

The Uniform Commercial Code, found in Chapter 25 of the North Carolina General Statutes, controls the rights of parties in the sale of a mobile home not affixed to realty. *See Hensley v. Ray's Motor Co. of Forest City, Inc.*, 158 N.C. App. 261, 264, 580 S.E.2d 721, 723

(2003). Breach of title claims are generally governed by N.C. Gen. Stat. § 25-2-312 (2007), which provides that the seller shall convey goods free from any liens that the buyer has no knowledge of at the time of contracting.

Furthermore, " 'prior decisions of this Court and our Supreme Court have classified a mobile home as a "motor vehicle" for purposes of interpreting the application of our motor vehicle laws to mobile homes.' " *Id.* (quoting *Hughes v. Young*, 115 N.C. App. 325, 328, 444 S.E.2d 248, 250 (1994)). Our Courts have held that when a party transfers title to a motor vehicle, they implicitly warrant that the title is clear of any liens or encumbrances. *See Thompson Cadillac-Oldsmobile, Inc. v. Silk Hope Automobile, Inc.*, 87 N.C. App. 467, 473, 361 S.E.2d 418, 422 (1987) (holding that it was "impossible" for a seller to transfer title of a motor vehicle to an auto-dealer without warranting title pursuant to the title transfer forms of the North Carolina Department of Motor Vehicles). A towing and storage lien exists when a person tows or stores a mobile home pursuant to an express or implied contract with the owner or legal possessor. N.C. Gen. Stat. § 44A-2(d) (2007); *See Green Tree Financial Servicing Corp. v. Young*, 133 N.C. App. 339, 342, 515 S.E.2d 223, 225 (1999) (holding that tower and storer of mobile home had a valid lien when the sheriff directed the tower to move the mobile home). If the lienor is asserting a lien against a motor vehicle, the lienor shall give notice to the Division of Motor Vehicles that a lien is asserted, and the Division of Motor Vehicles shall issue the lien to the person having legal title. *See* N.C. Gen. Stat. § 44A-4(b)(1)(2007).

Plaintiffs argue that since defendant, as the original owner, did not disclose the possible encumbrance or exclude the warranty by specific language, then defendant breached its contract with plaintiff and the warranty of title. We disagree and find that there was no evidence that defendant failed to transfer clear title; thus, there is no support for a breach of contract claim.

First, defendant did in fact transfer title to plaintiffs. Mrs. Henson admitted that she received a title, free from any liens from defendant. Plaintiffs presented no evidence that this title was encumbered. Plaintiffs did not introduce evidence of a lien, or call Mr. Gordon to testify. The evidence at trial tended to show that no one contracted with Mr. Gordon to remove the mobile home for a fee. There was no evidence that the Department of Motor Vehicles (DMV) sent notice to defendant that Mr. Gordon asserted a lien on the mobile home or that Mr. Gordon sent the DMV a notice of lien. Moreover, Mrs. Henson tes-

tified that the local police informed her that she had clear title and could remove the mobile home from Mr. Gordon's property. For the foregoing reasons, there was not more than a scintilla of evidence for the breach of warranty of title claim to survive the motion for directed verdict.

Accordingly, plaintiffs claim for breach of contract must also fail. There was no breach because defendant performed its obligation by providing clear title.

### IV. Negligence

[2] Plaintiffs' complaint alleges that defendant was negligent for breach of its duty to "ensure that [defendant] had clear title" and duties to hire and supervise employees. Plaintiffs do not discuss the negligence claim in their brief. Pursuant to N.C. R. App. P. 28(b)(6), "[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." Accordingly, this argument is deemed abandoned.

### V. Fraud and Unfair and Deceptive Practices

[3] Plaintiffs argue that the allegedly forged Agreement, coupled with the relationship between Mr. Gordon and defendant, is sufficient evidence to support their claims for fraud and unfair and deceptive practices. We disagree.

The essential elements of fraud are a "(1) [f]alse representation or concealment of a [past or existing] material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 437, 617 S.E.2d 664, 670 (2005)(quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)).

"[U]nfair or deceptive acts or practices in or affecting commerce, are . . . unlawful." N.C. Gen. Stat. § 75-1.1 (2007). "To prevail on such a claim, a plaintiff must show '(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business.' " *Walker v. Fleetwood Homes of N.C., Inc.*, 176 N.C. App. 668, 671, 627 S.E.2d 629, 31 (2006) (quoting *Mitchell v. Linville*, 148 N.C. App. 71, 73-74, 557 S.E.2d 620, 623 (2001)). *Walker* states that "[i]f a practice has the capacity or tendency to deceive, it is deceptive

for the purposes of the statute." *Id.*, 627 S.E.2d at 631-32 (quoting Mitchell, 148 N.C. App. at 74, 557 S.E.2d at 623). " 'A practice is unfair when it offends established public policy, as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.' " *Id.* at 671, 627 S.E.2d at 632 (quoting Mitchell, 148 N.C. App. at 74, 557 S.E.2d at 623).

Plaintiffs argue that defendant, or someone on behalf of defendant, forged Mrs. Henson's name on the Agreement and that this act constituted fraud and was an unfair and deceptive act.

We find that the purported forgery is immaterial and does not support either claim in light of the fact that defendant provided clear title. The language in the Agreement relieves defendant from any liability from any encumbrance on the mobile home. The allegedly forged document provides that the mobile home is being sold "AS IS/WHERE IS" with "[n]o warranties or guarantees . . . expressed or implied[,]" and that the "[b]uyer assumes all responsibilities for storage and/or mechanic liens, [and] storage and/or transport bills."

There is no evidence Mrs. Henson received anything other than a mobile home without encumbrances. Mrs. Henson admits that she received clear title to the mobile home from defendant. Mrs. Henson said that she could have moved the mobile home off of Mr. Gordon's property. Mrs. Henson even knew of the legal process to obtain her property from Mr. Gordon. Thus, even if Mrs. Henson did not sign the Agreement, plaintiffs did not suffer damage because the mobile home was not encumbered with a storage lien from Mr. Gordon.

In addition, there is no evidence that defendant contracted with Mr. Gordon to move the mobile home to his property. Instead, there was evidence that Mr. Gordon moved the mobile home without permission or authorization from defendant. Also, there was not more than a scintilla of evidence as to who in fact signed Mrs. Henson's name to the Agreement.

VI. Evidence Concerning Damages

[4] Plaintiffs argue that they should have been permitted to introduce evidence of damages to the jury. We decline to address this alleged error. *See Wells v. French Broad Elec. Mem. Corp.*, 68 N.C. App. 410, 413, 315 S.E.2d 316, 318-19 (1984) (stating that when the verdict is in defendant's favor, this Court need not address errors relating to the determination of damages).

VII. Evidence of Communications with Mr. Johnson and
Defendant's Relationship with Ben Gordon.

[5] Plaintiffs claim that the trial court should have permitted them to offer evidence as to their communications with Patrick Johnson and as to defendant's relationship with Ben Gordon. Plaintiffs offer no argument and cite no authority in support of the admissibility of such evidence. Pursuant to N.C. R. App. P. 28(b)(6) "[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." Accordingly, this argument is deemed abandoned.

VIII. Conclusion

Taken in the light most favorable to plaintiffs, there was not more than a scintilla of evidence that plaintiffs' claims could be asserted against defendant. We decline to address plaintiffs' arguments concerning admissibility of evidence. Accordingly, the trial court did not err in granting defendant's motion for directed verdict.

Affirmed.

Judges CALABRIA and HUNTER, Robert N., Jr. concur.